# THE METROPOLITAN DISTRICT

*vs.*

# THE TOWN OF HARTLAND

Superior Court          Hartford County          File No. 63962

MEMORANDUM FILED FEBRUARY 26, 1941.

*William A. Countryman, Jr.,* of Hartford, for the Plaintiff.

*H. Roger Jones,* of Winsted, for the Defendant.

INGLIS, J. The charter of the plaintiff as amended by number 368 of the Special Acts of 1933, provides: "Before any highway or bridge, except a state aid or trunk line highway or bridge, shall be overflowed by reason of any dam erected or reconstructed under authority given by this act and before any change of location or grade of any such highway shall be made, said district shall cause a plan or plans to be made showing the location of the highway, or highways or bridges which it proposes to alter, and the location of the new highway, or highways or bridges which it proposes to substitute, so as to fully show all changes in location proposed to be made, and such plans shall be presented to the selectmen of each town within which any such highway or bridge is or is to be located."

The Act goes on to provide that the selectmen shall submit such plan to a town meeting for approval and if such approval is not had and the District and the town shall not agree, the District may present its petition to the Superior Court for the appointment of a committee, which committee shall "make such changes in the plans for the alteration of such highway or highways as such committee may judge to be necessary for the purpose of carrying out the provisions of this act."

Purporting to act pursuant to the above Act, the District in June, 1940, submitted to the selectmen of the defendant town a plan showing three town highways which it wished

discontinued. One of these highways was the highway running northerly from the Barkhamsted town line along the west side of the Farmington River to route 20, which is a trunk line highway. Another was the highway running northerly from route 20 along the westerly side of the river to North Hollow and thence southeasterly to connect with a new route 20. Both of said highways are known as the West Hollow Road. The third was a road running northerly from route 20 to intersect the State highway which runs northerly from Nelson's Corner to West Hartland.

The first two of these highways will be overflowed by the proposed new reservoir of the District. The third will not be overflowed but is on the watershed in such proximity to the proposed reservoir that experts on sanitation say that it should be abandoned.

In the plan submitted, the following highways were proposed as substitutes for the above: a new State aid highway following generally the course of the former Center Hill Road, a town highway, northerly from the Barkhamsted town line to Nelson's Corner, a trunk line highway known as new route 20 running northerly and northeasterly and easterly from Nelson's Corner through West Hartland to North Hollow and thence southeasterly to East Hartland, and then a State aid highway running southwesterly from East Hartland mostly along the line of a former town road known as Washington Hill Road to the Barkhamsted line. All of these highways have been laid out by arrangement with the State Highway Commissioner and have already been built at the expense of the District. The first mentioned State aid road and the new route 20 as far as North Hollow approximately parallel the roads heretofore known as the West Hollow Roads, and are located about a mile to the west thereof. This system of substitute roads is also proposed to take the place of so much of old route 20 as runs across the place where the reservoir will be and the old East Hollow Road which has already been abandoned by the town.

The plan so submitted has been rejected by the Town of Hartland and the present petition is brought under the above Act for the appointment of a committee.

To the petition the town has filed a special defense the gist of which is that the District has never submitted any plan

proposing the substitution of town highways for the highways it seeks to have discontinued and therefore, it is claimed, has not complied with the Special Act. It also has filed a cross complaint praying a declaratory judgment as to the rights of the parties. It was agreed that the present hearing should be only as to the issues raised by the special defense and cross complaint and that the question as to the appointment of the committee should await the decision of these issues.

Briefly, the contention of the town is that the Special Act in question calls for the substitution of town highways for such town highways as shall be overflowed and in the second place that no highways are to be considered as substitutes for the town highways overflowed except such as are laid out and constructed after plans for the same have been approved by the town. It therefore claims that the substitute highways proposed by the District are not proper substitutes because they are not town highways and also because they have been constructed by the District before plans therefor had been approved by the town.

It is fundamental that towns and their selectmen in laying out and maintaining highways are acting solely as agents of the public. It follows that a town has no property rights in a highway that may not be taken away by the Legislature. There can be no question but that the Legislature has power to direct the discontinuance of a highway, if it protects the rights of abutting owners, without providing that compensation shall be paid to the town. The interpretation of the Special Act in question, therefore, should be approached with the thought in mind that the purpose of the Legislature was to protect the rights of the traveling public rather than to provide any compensation to the town for the taking of any of its property. It is not probable, in other words, that the Legislature intended that the District should be compelled to build roads in an entirely different part of the town simply on the theory that the town should receive compensation in that form for the highways which are to be abandoned. Indeed, it is an advantage to a town as such to be able to discontinue highways and thereby be relieved of the expense of repair.

There is nothing in the Special Act in question which provides that the town shall be compensated for the taking of highways. That the Legislature had no intention of providing

such compensation is confirmed by the fact that number 505 of the Special Acts of 1931, at page 659, provides for compensation for the taking of nearly every other conceivable form of property but not to a town for the taking of a highway.

Any highway serves two purposes. It provides to the abutting owners means of access to their properties. And it provides the general public with a way for travel from one end thereof to the other and between intersecting roads thereon.

In the present case the advantage of a highway to abutting owners need not be considered because it is apparent that, as to any road which is to be overflowed, the District must be the owner of all abutting property or at least have flowage rights thereover so that use of the road by abutting owners is going to be impracticable. Accordingly, in providing (as it did only by implication) that the District shall furnish substitute highways, it must be that it was only the interests of the traveling public that the Legislature intended to protect. In order to protect those interests the Legislature required the approval of the substitute highway by the town or, failing that, by a committee of this court. Here, too, the town is in the picture not as the owner of a property right which is being taken away, but rather as an agent of the public to see to it that the traveling public gets a reasonably adequate substitute for the highway which is going to be shut off from travel.

Now, it makes no difference to the traveling public whether it is traveling over a town highway, a State aid highway, or a trunk line highway. Its rights are as well protected, if not better, by providing a State aid highway as by providing a town road. If a new road gets the traveling public between substantially the same points as an old road it is an adequate substitute for the old whether it be a town highway or a State highway.

It is therefore concluded that it is intended by the Special Act in question that a highway offered by the District in substitution for a highway to be flooded need not necessarily be a town highway but may be either a State aid highway or a trunk line highway or both.

Nor is it essential under the Act that the substitute highway be one which remains to be laid out and built only after the town has approved it. The Act says specifically: "and such plans shall be presented to the selectmen of each town

within which any such highway or bridge *is* or is to be located." (Italics supplied.) It clearly contemplates, therefore, that the highway which is offered in the plan as a substitute for the overflowed highway may be one which is already in existence.

It is not here decided that the specific plan submitted by the District is one which ought to be approved or in particular that the State aid highways and trunk line highways offered therein as substitutes for the ways which are to be overflowed are proper substitutes. Those are questions for the committee to pass upon when it is appointed. But it is clear that the plan offered is such a plan for substitute highways as is con-templated by the Special Act and that the substitute ways suggested are not precluded from being proper substitutes sim-ply because they are State aid and trunk line highways.

So far as the abandonment of a portion of old route 20 is concerned, the Special Act provides: "If such bridge, highway or highways are trunk line or state aid, the approval of the highway commissioner as to location, grades, specifications and general · details shall be sufficient." It probably is true under the general law that when a trunk line highway is abandoned as such, it then becomes a town highway. It is competent, however, for the Legislature to override the general law in this regard in specific cases and that very apparently is what it has done here. By virtue of the Special Act, the Town of Hartland has no control over the old route 20 to prevent its being flowed by the ` District.

An interlocutory judgment may enter declaring the rights of the parties as follows:

(a) The Special Act contemplates that the plans required to be presented to the selectmen may properly be such as to show State highways without the jurisdiction of such select-men as substitute highways for those town highways which are to be overflowed.

(b) The Metropolitan District, when it seeks, under said Special Act, as amended, to overflow town highways, is re-quired prior to overflowing said highways to cause plans to be made showing the location of the highway, or highways or bridges which it proposes to alter, and the location of the new highway or highways or bridges which it proposes to substi-tute so as to fully show all changes in location proposed to

be made, and present them to the selectmen of the town in which said highways are or are to be located, but said proposed substitute highways need not necessarily be town highways. Such plans must be presented before the old highways are flooded but not necessarily before the substitute highways are laid out or built.

(c) The Metropolitan District is not required to submit to the selectmen of any town any plans relative to State highways under the jurisdiction and control of the highway commissioner, but such highways may, while in the course of laying out and construction or thereafter, be properly offered as substitute ways for town highways that are to be overflowed.

(d) Nothing in this interlocutory judgment is to be construed as deciding that under said Special Act The Metropolitan District has any right to compel the discontinuance of any town highway which is not going to be overflowed by its reservoir.